## Smith v. Commonwealth.

(Decided April 17, 1918.)

### Appeal from Kenton Circuit Court.

Rape—Statutory Rape—Attempt—Instructions—Prejudicial Error. —The offense of carnally knowing 'a female under sixteen years denounced by Kentucky Statutes, section 1155, being rape, evidence on a prosecution thereunder of an unsuccessful attempt at intercourse warrants an instruction submitting the question of attempted rape, punishable under section 1153, Kentucky Statutes; and since the minimum punishment prescribed for the latter offense is less than that prescribed for the offense of carnally knowing a female under sixteen years, the failure to give such an instruction is prejudicial error.

JOHN T. MURPHY for appellant.

CHARLES H. MORRIS, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Charles H. Smith was convicted of the crime of carnally knowing a female under the age of sixteen years

and his punishment fixed at ten years' confinement in the penitentiary. He appeals.

According to the evidence for the Commonwealth, Smith and wife roomed with Mr. and Mrs. Joe E. Davis, who lived in Latonia and had a daughter named Grace, who was only eleven years old but who was unusually large and well developed for her age. The alleged offense took place on August 10, 1917, while Mr. and Mrs. Davis were not at home. That evening Grace and her mother went to the picture show. The next afternoon Grace complained of her physicial condition and said Smith was the cause of it. Mrs. Davis then examined her daughter's womb and found blood and irritation. She then took her daughter to Dr. Carlton, a practicing physician, who examined the child and found her womb lacerated and torn. While Dr. Carlton says that this condition could have been produced by different means, he also says that it could have been caused by the penetration of the male organ. After ascertaining her daughter's condition, Mrs. Davis had Smith arrested. Smith requested to be taken to the home of Mrs. Davis by the arresting officer. He stated in Mrs. Davis' presence that the child said that she had been with this one and that one and ended the statement by saying, "I am not the only one." At the same time some one remarked that it was a rape case, whereupon Smith replied, "I didn't do that—I was man enough to quit." This statement was made in the presence of Mrs. Starkes, Mrs. Winters and the arresting officer. Dr. Carlton says that he and others called at the jail for the purpose of examining Smith to discover whether or not he was afflicted with a disease. While there Smith said something about his not being able to hold his passion and if he had a good lawyer he could get out of the difficulty. Dr. Heisel says that Smith also stated, "When a girl runs around after you and rubbed up against you, you are hardly responsible for what you did." According to Kerrick, the arresting officer, Smith said when arrested, "I didn't hurt that girl." The officer inquired what he meant. Smith replied, "I went so far and stopped. She is not in a family way." William Beuttel, Jr., who was also present at the jail says that he heard Smith say that he had had intercourse with the girl, that his passion was aroused so that he couldn't control himself. That he didn't think he was up against a hard proposition and that if he could

get a good attorney, he could get out of it. According to Mrs. Starks, she said to Smith, "You ought to be ashamed." Smith replied, "Well she laid down with me and I got warmed up like any other man, but I knew when to quit." The city attorney of Covington testified that when Smith was brought into police court, he asked Smith if he was guilty or not guilty. Smith said, "I tried to get it in but I didn't." On cross-examination the same witness stated that he asked Smith if he wanted to plead guilty and Smith answered, "Yes." The defendant objected to the evidence of Grace Davis on account of mental incapacity and she was not permitted to testify. The propriety of this ruling is not before us.

Smith testified in substance as follows: He was thirty-two years old and a married man. He and his wife had roomed with Mr. and Mrs. Davis for eight or ten days, and were taking their meals at the home of his father-in-law, who lived next door. On the afternoon of August 10, he was at the home of his father-in-law. His room was a front room of the Davis house. He left his father-in-law's home and went to his wife's house. He was sitting on the edge of his bed looking at the magazine index when Grace came in and threw herself on the bed with her clothes up around her hips. He said, "Grace, you shouldn't look like that." Grace then sat up and began fumbling with her underclothes. On one side there was a pin and one side was buttoned. He said, "Grace, did you ever do anything?" Grace said, "Yes." He then said, "Who with?" She said, "With Elmer." He said, "When?" She said, "Lots of times." He said, "You shouldn't do that." He then turned and looked at her the second time. The time couldn't have been very long. Grace then followed him over to the Dressman home where she remained all that evening. That night he and his wife occupied the room in the Davis home. They arose about 8:30 Saturday morning. Mr. Davis bade him "a cherry god morning." He never at any time attempted to have intercourse with the little girl. On cross-examination he stated that when Grace lay back on the bed she exposed herself. When she did that he was surprised and stood in front of her. When he left Grace followed him about forty paces behind. The witness also denied the conversations detailed by the witnesses for the Commonwealth and stated that the only thing that he said to Mrs. Davis was, "Mrs. Davis, if

there is anything wrong with your daughter, it is not me," and when he named Elmer (a brother of Grace Davis) Mrs. Davis said, "Take him out."

The principal ground urged for a reversal is the failure of the trial court to instruct on attempted rape under section 1153, Kentucky Statutes. It is the established rule that the offense of carnally knowing a female under sixteen years denounced by Kentucky Statutes, section 1155, is rape, and that evidence on a prosecution thereunder of an unsuccessful attempt at intercourse warrants an instruction submitting the question of attempted rape, punishable under section 1153, Kentucky Statutes. Perkins v. Commonwealth, 124 S. W. 794; Bethel v. Commonwealth, 80 Ky. 526; Young v. Commonwealth, 96 Ky. 573. The Commonwealth insists that no such instruction should have been given, however, because the appellant did not defend on the ground of attempted rape but on the sole ground that he did not have intercourse with the child. It will be observed that while there are sufficient corroborative circumstances to make appellant's guilt a question for the jury, the evidence against him consisted mainly of confessions made to different persons. While he stated to one witness that he had had intercourse with the child, he stated to another that he had tried to get it in but couldn't. This is not a case therefore where the Commonwealth's evidence tended to show only statutory rape and the accused merely denied the offense. Under those circumstances there would be no evidence of attempted rape and consequently no necessity for submitting that question. But where, as in this case, the evidence for the Commonwealth tends to show an unsuccessful attempt at intercourse, the accused is entitled to have the question of his guilt of the lesser offense submitted to the jury. And since the minimum punishment for attempted rape is less than that fixed for the offense of carnally knowing a female under sixteen years, it necessarily follows that the failure to give an instruction on attempted rape was prejudicial to the substantial rights of the accused.

We find nothing in the opening statement of the Commonwealth's attorney sufficiently prejudicial to authorize a reversal of the judgment on that ground.

Judgment reversed and cause remanded for a new trial consistent with this opinion.